UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY KIRK,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No.  2:23-cv-00824-EFB (SS)<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.  ECF No. 1.  The parties' cross-motions for summary judgment are pending.  ECF Nos. 11 & 15.  The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).  ECF No. 9.  For the reasons provided below, plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

**I.**     **Background**

On October 1, 2019, plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and supplemental security income (SSI) under Title

1

XVI of the Act, alleging disability beginning September 15, 2019.[1]  Administrative Record (AR) 33, 321-27.  Plaintiff alleged he was disabled due to conditions including a 2008 stroke that affected his speech, a 2018 heart attack and "heart condition," shortness of breath, COPD/asthma, chronic cough, bilateral shoulder problems, anxiety, depression, chronic pain, and chronic fatigue. AR 167.  Plaintiff's application was denied initially and upon reconsideration.  AR 33.  After a telephonic hearing before an administrative law judge (ALJ) on December 16, 2021, at which plaintiff was represented by counsel (AR 55-138), the ALJ published an unfavorable decision on March 9, 2022.  AR 33-47.

At the hearing, plaintiff testified that, until recently, he was homeless, but he was currently living in Section 8 housing.  AR 62, 64-65.  He was a high school graduate with some

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

college and had held several short-term jobs over the past fifteen years, including supervising the transportation of phone books for delivery; setting up dining rooms and washing dishes; and doing shipping and receiving for a rug company.[2]  AR 67-71.  He operated the grinder machine at a company that manufactured brakes.  AR 73-74.  More recently, he had been a laborer for a construction company, including operating forklifts and bobcats.  AR 76-77.  That job ended when he had a heart attack.  AR 77.  Afterward, he tried to work as a security guard, but "it was too much walking for me."  AT 78.  He then tried to work at a liquor store, but he couldn't lift heavy boxes.  AR 79.

As to conditions affecting his ability to work, plaintiff testified that he had had two strokes and a heart attack, and that he had PTSD and major depressive disorder.  AR 80-81.  He used an inhaler every day for asthma and COPD.  AR 87.  He testified that he could lift 10 pounds and walk two blocks with stopping to catch his breath.  AR 87-88.  He had difficulty sitting due to hemorrhoids.  AR 88, 91.

Vocational expert (VE) Sandra Fioretty testified that a hypothetical person of the same age, education, and work history as plaintiff, capable of medium work as set forth in the determined residual functional capacity (RFC), "could return to the phone book distribution job and the rug company job, each being the work of a shipping, receiving supervisor as generally performed in the national economy, and the phone book distribution job as actually performed by him."  AR 47; *see* AR 95-99.

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since September 15, 2019, the alleged onset date.

3. The claimant has the following severe impairment: coronary artery disease status post myocardial infarction with a history of two cerebral vascular accidents; hypertension.

4. The claimant does not have an impairment or combination of

---

[2] The ALJ's findings do not include plaintiff's age.  However, plaintiff's attorney stated that plaintiff was 55 years old at the time of the hearing.  AR 62.

3

   impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work in that he can lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk for six hours of an eight-hour day and sit for six hours of an eight-hour day; however, he can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl, occasionally climb ladders, ropes and scaffolds, and must avoid all exposure hazards (moving machinery, unprotected heights, etc.).

6. The claimant is capable of performing past relevant work as a shipping and receiving supervisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2019, through the date of this decision.

AR 36-47.

## II. Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III. Claims

Plaintiff claims the ALJ committed the following errors: (1) the ALJ did not properly evaluate three medical opinions as to mental limitations; (2) the ALJ improperly discounted plaintiff's subjective symptom allegations; (3) the Appeals Council did not properly evaluate new and material evidence submitted by plaintiff: and (4) the ALJ erroneously omitted mental work restrictions from the RFC.

### IV. Analysis

#### A. Medical Opinions

Plaintiff asserts that the ALJ failed to properly evaluate the opinion of Scott Stewart, Ph.D., who conducted a consultative psychological exam in January 2020. Plaintiff further asserts that the ALJ failed to evaluate or discuss the opinions of mental health providers Evelyn Kwong and Jade Thompson. Plaintiff contends these errors are harmful because there are no mental restrictions in the RFC, such that the RFC is not supported by substantial evidence.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The Ninth Circuit previously has required that, in order to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675.

////

However, for disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Filed in 2019, plaintiff's application is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). When a single medical source provides multiple opinions and findings, the ALJ must articulate how they were considered in a single analysis. 20 C.F.R. § 416.920c(b)(1).

### 1. Dr. Scott Stewart

On January 15, 2020, plaintiff underwent a psychological consultative examination by Dr. Scott Stewart, Ph.D. AR 719-720. He found plaintiff "oriented to person, place, time, and situation. Attention and concentration skills were in the marginal to normal range[.] Attention and concentration skills were not commensurate with overall cognitive functioning[.] . . . [H]is intellectual functioning appeared to be in the low average range." AR 720.

////

////

1   In summary, Dr. Scott wrote that plaintiff

> appears to have interpersonal skills required to relate to others in a work setting. *He seems able to sustain the attention needed to do repetitive tasks* and is able to handle the day-to-day pressures of a work environment. He is not presenting with symptoms associated with a psychological disorder at this time. Prognosis is good for a favorable response to treatment within the next 6 to 12 months. He is motivated for treatment and fully cooperative with the examination process.

AR 721 (emphasis added). Dr. Stewart noted "No Diagnosis" for plaintiff. AR 721.

The ALJ discussed Dr. Stewart's opinion as follows[3]:

> Dr. [Stewart] concluded or opined . . . that the claimant faced no limits from a psychiatric disorder. He opined the claimant could understand basic directions and intent of the examination; he had the interpersonal skills required to relate to others in a workplace and was *able to sustain attention needed for repetitive tasks*, and workplace pressures.

AR 38 (emphasis added), citing AR 719-721.

The ALJ found Dr. Stewart's opinion persuasive along with the opinions of the State Agency medical consultants, Dr. Robert Estock and Dr. Robert Bare, both of whom opined that plaintiff had no severe mental impairment. AR 38. The ALJ reasoned that these three opinions were "consistent with each other in finding the claimant's mental impairments impose less than a minimal limitation on his capacity to perform working tasks." AR 38. The ALJ further wrote:

> Each [of the three doctors] supports their opinion with their report, . . . Dr. [Stewart], [with] the objective findings upon direct interview and evaluation of the claimant. Their findings are consistent with the medical evidence of record showing limited evaluation and treatment for mental health impairments with psychiatric medications since June 2021, and some evidence of non-compliance with treatment, missing appointments. They are supported by his independence in activities of daily living.

AR 38.

Plaintiff argues that the ALJ did not sufficiently address Dr. Stewart's finding that plaintiff was capable of "repetitive tasks." This is significant, plaintiff reasons, because the ALJ

---

[3] The ALJ mistakenly referred to him as Dr. Foster, who performed the physical consultative exam.

7

found him able to resume his prior work as a shipping and receiving supervisor, a skilled job that requires greater mental abilities than "repetitive tasks." *See* Dictionary of Occupational Titles (DOT) 222.137-030 Shipping and Receiving Supervisor (rated reasoning level 4). Per the DOT, reasoning level 4 requires the worker to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables, . . . [and] [i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." DOT, Appendix C, II.

In response, defendant argues that "the context of Dr. Stewart's opinion" suggests that he didn't mean plaintiff could *only* perform repetitive tasks, merely that he could perform them. ECF No. 15 at 11. Defendant reasons that Dr. Stewart found plaintiff to have no psychological diagnosis and to present no mental symptoms, such that it would be "illogical" for him to conclude that plaintiff could only do repetitive tasks. *Id.*

In his in-person evaluation, Dr. Stewart stated that plaintiff's "attention and concentration skills were in the marginal to normal range as measured by a task measuring passive span of apprehension." AR 720. Dr. Stewart added that "attention and concentration skills were not commensurate with cognitive functioning." *Id.* He reported that plaintiff's abstraction abilities were unimpaired, his general information was adequate, and judgment was grossly intact. *Id.* He further noted that "Mr. Kirk's intellectual functioning appeared to be in the low average range based on his self-reported history and current performance." *Id.* While this might arguably support plaintiff's interpretation of the reference to "repetitive tasks," the ALJ found the evidence as a whole to support the conclusion that plaintiff "was able to sustain attention needed for repetitive tasks." AR 38.

In short, while plaintiff argues that the mental RFC finding of an ability to work as a shipping and receiving supervisor failed to take account Dr. Stewart's assessment of plaintiff's attention and concentration, the record as a whole is adequate to support the ALJ's RFC finding. Support for the finding is found in with in the text of Dr. Stewart's own report, as described above, as well as the January 23, 2020, State Agency consultant Dr. Estock's opinion that plaintiff's attention and concentration were in the normal range; his judgment, abstraction abilities, thought process, and insight were normal or unimpaired; and that he had no severe

8

mental impairment. AR 148. Further support is found in the September 10, 2020, State Agency consultant Dr. Bare's opinion agreeing with this assessment. AR 189. Because the ALJ credited these opinions as well as Dr. Stewart's, for various reasons set forth in the decision, plaintiff has not shown harmful error as to Dr. Stewart's opinion.

### 2. Evelyn Kwong and Jade Thompson

Plaintiff received mental health treatment at El Hogar Community Services. On June 14, 2021, treatment provider Evelyn Kwong noted that plaintiff had multiple mental symptoms stemming from past trauma, including "difficulty trusting others." AR 959. On June 17, 2021, treatment provider Jade Thompson conducted an intake assessment of plaintiff and noted various self-reported mental symptoms, including poor concentration. AR 961.

Plaintiff argues that the ALJ committed harmful error by failing to discuss or evaluate these statements. However, plaintiff has not shown (and does not argue) that either treatment provider was a licensed healthcare worker under 20 C.F.R. § 404.1502(d) (defining "medical source"), without which the ALJ was not required to evaluate their notes and/or opinions. Plaintiff has not shown harmful error on this basis.

### B. Credibility

Plaintiff claims that the ALJ erred by discounting his subjective symptoms of pain and dysfunction. He argues that the ALJ did not explain how the objective evidence and/or reported daily activities undermined plaintiff's subjective statements. Plaintiff further argues that the ALJ ignored objective evidence of degenerative disc disease of the cervical and lumbar spine.

The ALJ summarized plaintiff's symptom allegations as follows:

> The claimant alleges a combination of impairments causing weakness, fatigue, and chronic pain, accompanied by symptoms of depression and anxiety[.] . . . He states he is unable to work due to the functional limitations caused by his physical impairments. The claimant has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, remembering, completing tasks, concentrating, following instructions, using hands, and getting along with others, due to the symptoms of his impairments and chronic pain.

AR 42 (record citations omitted.) As to specific physical symptoms, the ALJ noted that plaintiff alleged

> shortness of breath with asthma, COPD and cough. . . . He has had bilateral shoulder pain for years that increases with lifting, and frequent overhead activities with the arms. He has pain from abdominal hernia several times weekly that is severe.

AR 39. The ALJ concluded that these statements were "not fully consistent with the medical evidence, that is, the objective findings, diagnostic testing, and medical imagery, and the longitudinal record of treatment reviewed." AR 42.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also*

*Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020). When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing *Lambert*, 980 F.3d at 1277–78. This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" *Lambert*, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Id.* at 1277–78.

 Here, the ALJ first considered the objective medical evidence and determined that physical exams, diagnostic tests, and medical imaging in the record "do not correspond to the level of pain and limitation alleged[.]"[4] AR 42. "While there are symptoms of abnormal clinical findings, the record does not reveal any significant signs that persistent throughout the relevant period." AR 42. The ALJ further found that plaintiff's symptoms "are controlled and improved with the treatment received." AR 42.

 The ALJ next summarized a series of exams at medical visits in 2019, 2020, and 2021, with largely normal physical and neurological findings, including normal range of motion, mood, affect, gait tone, muscle tone, bilateral hand grip strength, speech pattern, memory, judgment, and thought content. AR 42-43. Plaintiff was repeatedly assessed with hypertension and prescribed medication for reported chest pain. AR 43-44. He was also treated for shortness of breath; however, in August 2021, his treating cardiologist noted that he was doing well without any chest pain or shortness of breath. AR 44.

 "Overall," the ALJ wrote,

> the objective examination findings showed few significant and recurrent symptoms of abnormalities, while multiple cardiac work-ups demonstrated . . . mild to moderate cardiac abnormalities that [cardiologist] Dr. Clark referred to as moderate disease with mildly diminished ejection fraction. He also noted uncontrolled

---

[4] The ALJ noted plaintiff's August 2021 CT scan of the cervical spine, showing degenerative changes and stenosis. AR 40; *see* AR 2804-05, 2949. However, the ALJ wrote, "[t]here is no evidence of continued diagnosis, or treatment of more than 12 months" for this condition, which did not meet the duration requirement and could not be found severe. AR 40.

>hypertension, with plans to provide regular monitoring and medications. Given this, I find the claimant's alleged symptoms are not fully consistent with and supported by the objective findings in the record.

AR 45.

The ALJ next reasoned that plaintiff's activities of daily living showed "good control of [his] symptoms and conditions," citing his "substantial independen[ce] in self-care" and ability to do household chores, walk brief distances, and shop. AR 45. The ALJ also cited plaintiff's ability to "understand and sustain his treatment plain, attend medical appointments or get himself to the emergency room, maintain a conversational exchange with providers and take multiple medications without any apparent difficulties." AR 45.

The third factor in the ALJ's credibility analysis was "evidence inconsistent with the claimant's allegations," including periods where the record showed that plaintiff was non-compliant with medication and had been using cocaine, drinking excessively, and smoking. AR 45. The ALJ noted that plaintiff was hospitalized in October 2019 for chest pain during a time of "medication non-compliance"; he also tested positive for cocaine and was advised to stop using it. AR 42, 45, citing AR 1862-1868. Similarly, when plaintiff was hospitalized in April 2021, treatment providers noted that he had been "off medication for 2.5 months" and "was drinking excessively and smoking a pack per day." AR 42, 45; see AR 2468, 2480. However, plaintiff "reported 15 years sobriety from drugs." AR 37, citing AR 937-950. *See Thomas v. Barnhart*, 278 F.3d 949, 959 (9th Cir. 2002) (upholding credibility determination where, in discounting subjective complaints, "the ALJ found that [the claimant] had not 'been a reliable historian, presenting conflicting information about her drug and alcohol usage.'").

Finally, the ALJ found that plaintiff's "allegations are challenged by the opinions from examining physicians . . . and prior administrative medical findings." AR 46 (citing 2020 medical opinions by two State Agency consultants determining that plaintiff could perform medium work). *See* 20 C.F.R. § 404.1529(c)(4) (statements from medical sources are a valid source when evaluating claimant's symptoms). The ALJ concluded that, while "the evidence does not support the functional limitations alleged by the claimant, . . . accommodations are made

for his chronic symptoms." AR 45. The determined RFC was for medium work, consistent with the opinions of the State Agency medical consultants. AR 45-46.

Here, the ALJ linked plaintiff's testimony to specific record evidence sufficient to satisfy the *Lambert* standard. The ALJ provided more than a "boilerplate" conclusion that plaintiff's statements were "inconsistent" with the summarized medical record. Rather, she set forth why the objective medical evidence, prior administrative medical findings, independent daily activities showing mental and physical functionality, and periods of medication noncompliance and substance abuse, undermined plaintiff's testimony of debilitating mental and physical impairments. Because the ALJ used the proper process and provided proper reasons, the undersigned defers to her discretion on this issue.

C. Appeals Council

Plaintiff next claims that the Appeals Council (AC) did not properly evaluate new and material evidence consisting of two medical opinions. Plaintiff's attorney submitted this new evidence to the AC after the ALJ's decision issued on March 9, 2022. The AC denied review of the ALJ's decision one year later. AR 1-7.

Plaintiff submitted a February 7, 2022 checkbox opinion by Lily Jhang, N.P., who opined that plaintiff would be unable to work for a one-year period. AR 139. She explained as follows:

> Patient cannot work due to his health conditions: history of myocardial infarction (2019) with CAD, history of stroke x 2, with residual speech problem. He has shortness of breath with exertion. Bilateral shoulder pain – rotator cuff tears. He has decreased strength in both arms – lifting objects are difficult. He is anticipating hemorrhoid surgery in near future.

AR 139. In its decision denying review, the AC noted that that this evidence "does not show a reasonable probability that it would change the outcome of the decision." AR 2.

Plaintiff also submitted an August 18, 2022 medical opinion from Richard A. Clark, M.D. who opined that plaintiff had "significant cardiovascular problems and is limited in his ability to walk/be active on a daily basis." AR 141. In denying review, the AC found this evidence did "not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled . . . on or before" the ALJ's March 9, 2022 decision. AR 2.

13

The Appeals Council made these records part of the administrative record. Accordingly, this court will review the ALJ's decision under the substantial evidence standard with due consideration of these treatment records. *See Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (where plaintiff submitted additional materials to the Appeals Council in requesting review of the ALJ's decision, court may properly consider the additional materials because the Appeals Council addressed them in the context of denying plaintiff's request for review); *see also Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting that where the Appeals Council declined to review the decision of the ALJ after examining the entire record, including new material, court considers both the ALJ's decision and the additional materials submitted to the Appeals Council); *Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Here, even with the addition of Ms. Jhang's opinion into the record, the physical RFC is supported by substantial evidence, including two State agency opinions finding plaintiff could perform medium work and multiple normal examination findings. It is not clear what Ms. Jhang's one-page opinion is based on aside from plaintiff's self-reports, and her statement that he had heart disease and a history of strokes was reflected in the ALJ's findings of severe impairment. The ALJ also noted plaintiff's sometime shortness of breath, but found it well-controlled by medication and made "accommodations for his chronic symptoms" by limiting him to medium work. AR 42-45. Overall, Ms. Jhang's opinion adds little new information.

As to Dr. Clark's opinion, written after the period under review which ended with the ALJ's March 9, 2022 decision, such opinions are "less persuasive" than those issued before an adverse decision. *Bens v. Saul*, 2020 WL 6075750, *6 (E.D. Cal. Oct. 15, 2020), citing *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *see also Berkebile v. Berryhill*, 714 F. App'x 649, 651 (9th Cir. 2017) (unpublished) (rejecting argument that a treating source opinion submitted after the ALJ's decision provided a basis for remand). Here too, it is not clear what Dr. Clark's three-line opinion is based on other than plaintiff's self-reports (e.g., "he is only able to walk one block before he has to stop and rest"), and plaintiff's cardiovascular problems are already accounted for in the ALJ's findings. With the addition of this opinion, the physical RFC remains supported by substantial evidence.

D. Mental RFC

Lastly, plaintiff argues that the ALJ erred in omitting mental limitations in the RFC, such as would preclude him from resuming his job as a shipping and receiving supervisor. However, as discussed above, the mental RFC was supported by substantial evidence, including two medical opinions finding that plaintiff had no mental work restrictions. AR 38. Plaintiff has not shown harmful error on this basis.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is DENIED;
2. Defendant's cross-motion for summary judgment (ECF No. 15) is GRANTED; and
3. Judgment is entered for the Commissioner.

Dated: August 12, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE